UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TRANSIT GROUP, INC., et al., | ) | Case No. 6:-01-bk-12820-KSJ |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | |
| MICHAEL MOECKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. 6:03-ap-00664-KSJ |
| vs. | ) | |
| | ) | |
| KENT L. JOHNSON, PATRICIA H. | ) | |
| JOHNSON, KENNETH F. JOHNSON, | ) | |
| KEVIN L. JOHNSON, KYLE W. | ) | |
| JOHNSON, KIMBERLY J. RICCIO, | ) | |
| JONES W. LAKE, DOUGLAS C. | ) | |
| HADDEN, DANA L. QUACKENBUSH, | ) | |
| AND JAMES B. STALKER, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION DENYING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

In 1998, three-and-one-half years before it filed this reorganization case, the debtor,

Transit Group, Incorporated ("Transit"), purchased[1] the trucking company, KJ Transportation

("KJ"), then owned by the defendants, Kent, Patricia, Kenneth, Kevin, and Kyle Johnson, and

Kimberly J. Riccio, Jones W. Lake, Douglas C. Hadden, Dana L. Quackenbush, and James B.

Stalker. The plaintiff, Michael Moecker, Creditor Agent for the Transit Group Creditors' Trust,

---

[1]    The plaintiff refers to Transit's acquisition of KJ as a forward triangular merger (Doc. No. 1, p. 4). However, for simplification purposes in this opinion, the Court refers to the transaction as a purchase or an acquisition because the exact transaction details are not relevant on summary judgment. The parties can provide all relevant details concerning the merger at the trial on the claims in this adversary proceeding.

argues that the purchase was constructively fraudulent and is avoidable because Transit was insolvent at the time and did not receive a reasonably equivalent value in the exchange (Doc. No. 1).

The defendants have filed a Motion for Summary Judgment (the "Motion") (Doc. No. 11), which the plaintiff opposes (Doc. No. 19). In the Motion, the defendants argue that they are entitled to the entry of a summary judgment in their favor because: (i) the plaintiff does not have standing to assert this avoidance action; (ii) Transit was solvent when it acquired KJ; (iii) the action is barred by judicial estoppel; and (iv) the action is barred by *res judicata*. After reviewing the pleadings and affidavits and considering the parties' arguments and applicable law, the defendants' Motion is denied.

Some facts are undisputed. Transit was incorporated[2] as a parcel delivery business in 1985. In an attempt to increase efficiency, in 1997, Transit reorganized into a holding company with the goal of acquiring and consolidating short, medium, and long haul trucking companies into its operations. Between July, 1997, and December, 1999, Transit acquired and incorporated approximately twenty operating divisions into its infrastructure.

One of the companies Transit acquired, KJ, was owned by the defendants. In June, 1998,[3] Transit entered into an agreement with the defendants to purchase (the "Purchase Agreement") KJ as a subsidiary. Under the Purchase Agreement, Transit purchased all of the issued and outstanding capital stock of KJ from the defendants for $10,700,000 (the "Purchase Price"),

---

[2]    On the petition date, Transit was a Florida corporation with its headquarters and principal place of business in Atlanta, Georgia.

[3]    The Complaint alleges that the transaction occurred in July, 1999; however, it appears that the parties agree that the transaction actually occurred in June, 1998 (Doc. No. 11, p. 2, n. 1, and p. 3, ¶ 8).

consisting of cash in the amount of $3,000,000, and 878,688 shares of Transit stock with an ascribed value of $6,700,000.[4]

Approximately three-and-one-half years later, on December 28, 2001, Transit filed this Chapter 11 reorganization case. On September 23, 2002, the defendants filed an objection to confirmation of the debtors' plan of reorganization asserting various grounds including that the plan improperly sought certain third-party releases for Transit's officers and directors (Main Case, Doc. No. 659). The release was problematic for the defendants because they had filed a lawsuit[5] against Transit that also named two pre-petition directors of Transit, T. Wayne Davis and Philip A. Belyew, as defendants. If approved, the release would have precluded the defendants' claims against these two directors.

Transit and the defendants resolved the objection relating to the release by executing an agreement titled "Stipulation Resolving Matters Involving Objection by Certain Prepetition Shareholder/Creditors" (the "Stipulation"). The Stipulation, signed on October 2, 2002, provided that, "[i]n full and final resolution of the Johnson Objection": (a) the Objection would be withdrawn with prejudice; (b) the plan would be modified to limit the release and injunction provisions to permit the defendants to pursue their state court case against Transit and its officers and/or directors;[6] and (c) the defendants would consent to the confirmation of the debtor's plan. The parties filed a Motion to Approve the Stipulation as a "full and final resolution of all issues between them" in Transit's bankruptcy case, and, after notice to all parties in interest, including

---

[4]     The Complaint alleges that the Purchase Price was $10,700,000, consisting of $3,000,000 in cash and $6,700,000 in stock (Doc. No. 1., p. 4, ¶ 14); however, $6,700,000 plus $3,000,000 equals only $9,700,000. Therefore, the Court is uncertain as to the exact amount of the Purchase Price. The defendants stated that they had no knowledge of the purchase price in their Answer (Doc. No. 4, p. 3, ¶ 14).

[5]     The case was filed in the Superior Court of Cobb County, State of Georgia, Civil Action File No. 00-1-9879-35, alleging, *inter alia*, fraud and breach of fiduciary duty with damages exceeding $6,000,000 plus punitive damages.

[6]     James Salmon was an exception. He did receive a release under Transit's Amended Plan.

counsel for the creditors' committee, the Court entered an order approving the Stipulation on December 12, 2002.

Transit confirmed its amended reorganization plan on November 27, 2002, with the support of the defendants (the "Amended Plan") (Main Case, Doc. No. 843). The Amended Plan designated a Creditors' Trust (the "Trust") vested with, among other things, all avoidance actions owned by the debtor's bankruptcy estate, including claims under Bankruptcy Code[7] Sections 544, 547, 548, 549, 550, 551, and 553. Michael Moecker, the plaintiff, was specifically appointed pursuant to Bankruptcy Code Section 1123(b)(3)(B) and designated as the Trust's Creditor Agent charged with avoiding transfers for the benefit of the Trust's beneficiaries, who would receive a pro rata share of any recovered transfers (Main Case, Doc. No. 606, pg. 53; Doc No. 605, pgs. 36-37, 80).  No party objected to the plaintiff's appointment.

After confirmation, the plaintiff filed a two-count Complaint against the defendants pursuant to his authority under the Amended Plan seeking to recover the monies Transit paid the defendants in exchange for KJ back in June, 1998,[8] plus costs and interest, and an order disallowing any claim of the defendants until they turned over the monies allegedly owed.  The critical factual issue in this adversary proceeding concerns the debtor's financial condition around the time it acquired KJ, specifically, whether the debtor was insolvent or was rendered insolvent as a result of the purchase.

Regarding the debtor's financial condition, the plaintiff alleges that Transit greatly increased its revenue shortly after acquiring the various trucking companies, such as KJ, but that Transit later experienced substantial and increasing losses. Between 1997 and 2000, the debtor's

---

[7]    Unless otherwise stated, all references to the Bankruptcy Code herein refer to Title 11 of the United States Code.

[8]    See footnote 3, *supra*.

total revenues increased from $34 million to over $505 million. Between 1997 and 1999, the debtor's operating profits increased from $1.3 million to $12.9 million. However, by 2000, Transit's operating losses totaled $181.9 million. As a result of the losses, the debtor reevaluated certain "goodwill"[9] it acquired, or ostensibly acquired, in purchasing the various operating trucking companies between 1997 and 1999. Apparently doubting the likelihood of recovering on its goodwill, in September, 2000, the debtor wrote off $111.4 million in goodwill, including the goodwill allegedly acquired by the debtor in purchasing KJ.

Both counts in the plaintiff's Complaint, asserted pursuant to Bankruptcy Code Sections 544(b) and 550, rely on the same facts and contain the same allegations—that an actual creditor exists who could avoid the transfer pursuant to state law[10] and that the debtor did not receive a reasonably equivalent value or fair consideration in the exchange. Otherwise, Count One alleges that:

> At the time of the payment of the Purchase Price, the Debtors (i) were engaged in or were about to engage in a business or transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction, or (ii)

---

[9]    Goodwill has been defined as follows:

A business's reputation, patronage, and other intangible assets that are considered when appraising the business, esp. for purchase; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets.

'Good will is to be distinguished from that element of value referred to variously as going-concern value, going value, or going business. Although some courts have stated that the difference is merely technical and that it is unimportant to attempt to separate these intangibles, it is generally held that going-concern value is that which inheres in a plant of an established business.'

BLACK'S LAW DICTIONARY, 7TH ED. p. 703 (citing 38 Am. Jur. 2d *Good Will* § 2, at 913 (1968)).

[10]    The Complaint does not reference any particular statute, but the Court presumes the state law to which the plaintiff refers is Florida's Uniform Fraudulent Transfer Act, embodied in Florida Statute Sections 726.101, *et. seq.*

> intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

(Doc. No. 1, p. 5, ¶ 21). Count Two alleges that:

> At the time of the payment of the Purchase Price, the Debtors were insolvent or became insolvent as a result thereof.

(Doc. No. 1, p. 7, ¶ 27). Count One requires a detailed examination of the debtor's assets in June, 1998, in relation to the KJ purchase in order to determine whether the assets it had remaining after the purchase were "unreasonably small" and an examination of the debtor's intent and subjective belief regarding whether purchasing KJ would result in an inability to pay its debts when due. Additionally, Count One requires an objective examination of what the debtor reasonably should have believed in terms of its ability to pay its debts after the KJ purchase. Like Count One, Count Two also requires an examination of the debtor's assets in June, 1998, to determine whether Transit was insolvent when it purchased KJ or whether the purchase rendered it insolvent.

In the Motion, the defendants argue that they are entitled to the entry of summary judgment in their favor on the plaintiff's Complaint on four grounds:  first, they argue that the plaintiff lacks standing to prosecute his claims against them; second, even if the plaintiff does have standing, the defendants argue that, based on Transit's consolidated balance sheet for 1998 listing Transit's assets as exceeding its liabilities by $53,271,000, Transit was solvent when it acquired KJ and was not rendered insolvent as a result of the purchase; third, the defendants argue that the action is barred by the doctrine of judicial estoppel because it was not adequately disclosed in the debtor's schedules, Disclosure Statement, or in the Amended Plan; and fourth, they argue that the plaintiff's cause of action is *res judicata* because the Court entered an order

fully and finally resolving all issues between the parties which was incorporated into the confirmation order. The plaintiff opposes each of these arguments.

**Summary Judgment Standard.** Pursuant to Federal Rule of Civil Procedure 56, which is applicable under the Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.    The moving party has the burden of establishing the right to summary judgment. Fitzpatrick v. Schlitz (In re Schlitz), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986). In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).    Therefore, a material factual dispute precludes summary judgment.    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).    When opposing a motion for summary judgment, a party may not simply rest on the pleadings but must demonstrate the existence of elements essential to the non-moving party's case and for which the non-moving party will bear the burden of proof at trial.    Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) cert. denied, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

**Standing.**  The defendants argue quite simply that only trustees, pursuant to Bankruptcy Code Section 544,[11] or debtors in possession, pursuant to Bankruptcy Code Section 1107(a),[12] have standing to pursue fraudulent transfer claims. Since the plaintiff is neither, the defendants argue that he lacks standing to pursue the claims in this adversary proceeding. The Court rejects the defendants' position.

In <u>Nordberg v. Sanchez</u> (<u>In re Chase & Sanborn Corp.</u>) 813 F.2d 1177, 1180, n.1 (11th Cir. 1987), the Eleventh Circuit Court of Appeals addressed arguments concerning whether a "creditor trustee" in a debtor's Chapter 11 case had standing to assert a claim against the debtor under Section 548.   The Bankruptcy Court had concluded that, pursuant to Section 1123(b)(3)(B),[13] the creditor trustee could bring the lawsuit since no trustee had been appointed under the plan and the debtor in possession had interests in common with the defendants. <u>Nordberg</u>, 813 F.2d at 1180, n.1. Like the defendants in this case, the defendant on appeal in

---

[11]    Bankruptcy Code Section 544(b) provides in relevant part as follows:

   (1)  [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

[12]   Bankruptcy Code Section 1107(a) provides as follows:

   (a)  Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

[13]   Bankruptcy Code Section 1123(b)(3) provides as follows:

   (b)  Subject to subsection (a) of this section, a plan may—

      (3) provide for—

         (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

         (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

Nordberg argued that because the plaintiff was neither the trustee nor the debtor in possession, the plaintiff did not have standing to assert a fraudulent transfer claim. In addition, the defendant argued that the creditor trustee "was not, in fact 'appointed' by the court to enforce the claims." Id.

> In rejecting the defendant's arguments, the Eleventh Circuit Court concluded that:

>> [a]lthough the [bankruptcy] court did not formally and specifically appoint the creditor trustee to enforce the claims, **the reorganization plan approved by the court recognized that the creditor trustee would have the responsibility of pursuing claims of the debtor. The court's approval of a plan granting this authority to the creditor trustee was sufficient, under the Bankruptcy Code, to confer on the creditor trustee standing to assert this claim.**

Nordberg, 813 F.2d at 1180, n.1 (emphasis added). Thus, the Eleventh Circuit found that the creditor trustee had derivative standing to bring fraudulent transfer causes of action pursuant to Sections 548 and 1123(b)(3)(B), the latter statute being the same statute cited in Transit's confirmed plan authorizing the plaintiff to assert state law claims pursuant to Section 544.

The facts in this case are similar to those in a recent decision issued by the Bankruptcy Court for the Western District of Pennsylvania in Official Committee of Unsecured Creditors of J. Allan Steel Co., v. Nucor-Yamato Steel Co. (In re J. Allan Steel Co.), 323 B.R. 425 (Bankr. W.D. Penn. 2005). In that Chapter 11 case, the debtor assigned its right to prosecute avoidance actions to the creditors' committee in its plan of reorganization, and the Bankruptcy Court confirmed the plan. When the creditors' committee subsequently initiated a preference action against one of the debtor's creditors pursuant to Section 547, the creditor responded by arguing that the creditors' committee lacked standing to prosecute the action. The Bankruptcy Court rejected this argument finding that the creditors' committee had the requisite standing and that, because the debtor authorized the creditors' committee to "act as its surrogate in deciding

whether to bring and to prosecute avoidance actions,… the principle that only a trustee or a debtor-in-possession may bring an avoidance action in accordance with § 547 is not violated…" J. Allan Steel, 323 B.R. at 432. Moreover, because the plan had been confirmed, the court concluded that all issues concerning the creditors' committee's standing were *res judicata*. Section 1141(a)[14] provides that confirmation orders are binding on the debtor and creditors alike as to all issues that could have been decided at the confirmation hearing. J. Allan Steel, 323 B.R. at 432 (citing Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir.1997)). Any issues or objections to the debtor's assignment of its avoidance actions to the creditors' committee should have been addressed prior to or at the time of confirmation.

The same is true here, albeit in the context of Bankruptcy Code Section 544, rather than Section 547. The plaintiff was duly appointed under Section 1123(b)(3)(B). The Amended Plan was confirmed with the overwhelming consent of the debtors' creditors. Any concerns regarding the plaintiff's standing to bring avoidance actions should have been raised at or prior to confirmation.

In order to assert the avoidance claims against the defendant, the plaintiff need only establish that: (1) he has been appointed, and (2) he is a representative of the estate. Pardo v. Pacificare of Tex., Inc. (In re APF Co.), 264 B.R. 344, 353 (Bankr.D.Del.2001) (citing Retail Mktg. Co. v. King (In re Mako, Inc.), 985 F.2d 1052, 1054 (10th Cir.1993); Citicorp Acceptance Co. v. Robison (In re Sweetwater), 884 F.2d 1323, 1327-28 (10th Cir.1989); McFarland v. Leyh (In re Texas Gen. Petroleum Corp.), 52 F.3d 1330, 1335 (5th Cir.1995)). "The first element

---

[14]   Bankruptcy Code Section 1141(a) provides as follows:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

requires that the court approve the appointed party, as for example, through plan confirmation." Pardo, 264 B.R. at 353 (citing Sweetwater, 884 F.2d at 1326). "The second element generally requires a court to decide 'whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors.'" Id. (citing 884 F.2d at 1327).

The plaintiff has established both elements in this case. He was appointed pursuant to Bankruptcy Code Section 1123(b)(3)(B), which this Court approved in confirming the Amended Plan. The issue is now *res judicata*. Any amounts recovered by the plaintiff will be distributed to the beneficiaries of the Trust, which is largely comprised of the debtor's unsecured creditors (Main Case, Doc. No. 606, p. 53; Doc No. 605, pp. 36-37, 80). Therefore, any recovery will benefit the debtor's estate.

In Chapter 7 cases, some courts indeed have ruled that bankruptcy courts lack the authority to bestow standing on creditors to prosecute avoidance claims on behalf of the estate.[15] However, a different analysis applies in Chapter 11 cases.  Sections 1107 and 1123(b)(3)(B) of the Bankruptcy Code specifically allow creditors' committees  or  other similarly situated entities to pursue avoidance actions such as those asserted here where they are appointed and approved under a confirmed plan or by Court order.  See In re Spaulding Composites Co., Inc., 207 B.R. 899, 904 (9th Cir. B.A.P. 1997) (debtor in possession's stipulation effective to confer standing on

---

[15]    See In re Harrold, 296 B.R. 868, 872-75 (Bankr. M.D. Fla. 2003) (collecting Chapter 7 cases where courts have declined to confer standing to bring causes of action under Sections 547 and 548, where courts have and have not permitted exceptions to that general rule, and where courts in Chapter 11 cases have permitted creditor committees to bring avoidance actions); In re Pro Greens, Inc., 297 B.R. 850, 856 (Bankr. M.D. Fla. 2003) (the power to prosecute fraudulent transfer actions pursuant to Section 548 lies solely with the trustee in a Chapter 7 case; however, a "reorganization trustee, post-confirmation, may pursue claims, including avoidance actions against third parties, on behalf of the estate if the confirmed plan and order of confirmation so provides."); Surf N Sun Apts., 253 B.R. 490, 494-95 (M.D. Fla. 1999) ("The bankruptcy court may not, however, unilaterally confer standing upon the creditor to pursue the claim itself. If such authority is to be granted, it must come from Congress and not the courts.")

unsecured creditors' committee); <u>Coral Petroleum, Inc. v. Banque Paribas-London</u>, 797 F.2d 1351, 1362-63 (5th Cir.1986) (same). Accordingly, the Court holds that the plaintiff does have derivative standing to pursue the claims against the defendants in this adversary proceeding.

**Solvency**. As stated earlier, a critical factual issue in this adversary proceeding concerns Transit's financial condition at the time it acquired KJ. If Transit was solvent when it acquired KJ and remained solvent for some time thereafter, Count II of the Complaint fails. Count I also, to an extent, depends upon Transit's financial condition in June, 1998. The Court must evaluate Transit's assets at the time of the purchase to determine whether after the purchase its remaining assets were "unreasonably small." The Court must evaluate Transit's intent and ability to pay its debts after acquiring KJ.

The defendants argue that two facts conclusively demonstrate Transit was solvent when it purchased KJ. First, they argue that the plaintiff's conclusion that Transit was insolvent is based entirely on an alleged impairment of goodwill and point out that Transit did not schedule its goodwill as impaired on its Securities and Exchange Commission Form 10-K for the fiscal year ending on December 31, 1999. Second, the defendants note that Transit's 1998 consolidated balance sheet shows that Transit's assets exceeded its liabilities by $53,271,000. Certainly, Transit's balance sheet for the year ending 1998 showing that its assets exceeded its liabilities by $53,271,000 is indicia of solvency during the relevant time period. In addition, the defendants note that, because Transit's operating profits increased by $11.6 million between 1997 and 1999 and revenues rose to over $505 million in 2000, Transit was obviously solvent at the time it acquired KJ and was not rendered insolvent by the acquisition.

The plaintiff raises essentially three arguments in response. First, Moecker argues that solvency is an intensely factual issue and that discovery is still ongoing, making defendants' solvency argument premature. Second, the plaintiff observes that Transit's 10-K Form referenced by the defendants was completed on a "book value" basis and that asset valuation for an insolvency analysis is properly based not on book value but on a "fair value" analysis. Transit's 1998 consolidated balance sheet simply does not demonstrate solvency on a "fair value" basis. Third, the plaintiff points out that some courts have concluded that goodwill is not a proper factor in determining solvency because goodwill is an intangible asset that cannot be separately sold to satisfy the claims of creditors.    Therefore, to the extent that goodwill constitutes a large portion of Transit's "book" value, the 1998 consolidated balance sheet grossly overstates the "fair" value of Transit's assets.   The Court agrees that issues relating to solvency generally are not susceptible to summary judgment because factual disputes usually exist, as they do here. More evidence is required in order to determine Transit's financial condition during the relevant time period.

Transit's insolvency is an essential element to the plaintiff's case for which the plaintiff bears the burden of proof. Celotex, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. The plaintiff is entitled to present additional documentation and expert testimony on the value of the debtor's assets and financial condition during the relevant time period. For example, the plaintiff is correct that valuation of assets for an insolvency analysis is performed on a "fair value" basis, not a "book value" basis. "An entity is insolvent if its debts are greater than its assets, at a fair valuation, exclusive of property exempted or fraudulently transferred." In re Golden Mane Acquisitions, Inc., 221 B.R. 963, 967 (Bankr. N.D. Ala. 1997) (citations omitted).

If Transit's 10-K Form was indeed completed based on a "book value" of assets, the valuation would have to be modified for an insolvency analysis. <u>Havee v. Belk</u>, 775 F.2d 1209, 1212, n.3 (4th Cir. 1985) (observing that the "use of book value as a mechanical determinant in the formula for arriving at 'fair' value [was] of questionable propriety") (<u>citing</u> <u>Rubin v. Manufacturers Hanover Trust Co.</u>, 661 F.2d 979, 995 (2nd Cir. 1981); <u>Dreyer v. Greene</u>, 267 F.2d 44, 45 (5th Cir.1959); <u>In Re Euro-Swiss International Corp.</u>, 33 B.R. 872, 885 (S.D.N.Y.Bankr.1983)). The proper test "focuses on the fair market value of the debtor's assets and liabilities within a reasonable time of the transfers." <u>Briden v. Foley</u>, 776 F.2d 379, 382 (1st Cir. 1985). "Assets should be reduced by the value of the assets not readily susceptible to liquidation and the payment of debts." <u>Id.</u> "Fair value, in the context of a going concern, is determined by the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts." <u>Golden Mane Acquisitions</u>, 221 B.R. at 967 (<u>citing</u> <u>Lawson v. Ford Motor Co.</u> (<u>In re Roblin Industries, Inc.</u>), 78 F.3d 30, 35 (2nd Cir.1996)). At this point, the Court lacks any evidence of the fair value of Transit's assets during the relevant time period and, accordingly, concludes summary judgment is inappropriate.

**Judicial Estoppel**. The defendants next argue that the circumstances in this case warrant the use of judicial estoppel to bar plaintiff's avoidance action. They maintain that the debtor was fully aware of the facts surrounding the KJ acquisition that could give rise to an avoidance claim and that the debtor affirmatively failed to disclose the existence of the claim despite negotiating a settlement in order to trick the defendants into withdrawing their objection and consenting to confirmation of Transit's plan. They argue, citing <u>Oneida Motor Freight, Inc. v. United Jersey</u>

<u>Bank</u>, 848 F.2d 414, 417 (3rd Cir. 1998), <u>Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.</u>, 337 F.3d 314, 321 (3rd Cir. 2003) and <u>Barger v. City of Cartersville</u>, 348 F.3d 1289, 1294 (11th Cir. 2003),  that bad faith and improper motives can be inferred by the "deafening" silence concerning the multi-million dollar avoidance claim during the defendants' negotiations with the debtor in resolving their objection to confirmation.

The defendants also cite <u>In re Huntsville Small Engines, Inc.</u>, 228 B.R. 9, 13 (Bankr. N.D. Ala. 1998), in support of their argument that the plaintiff's claims here should be barred because they were not adequately disclosed. However, <u>Huntsville Small Engines</u> is easily distinguished from this case. In <u>Huntsville Small Engines</u>, the debtor's disclosure statement and plan contained only the following blanket provision:

> Notwithstanding confirmation of the Plan, the Debtor shall have all rights after confirmation to pursue all causes of action as it may have had before confirmation under any state or federal law.

Nowhere did the plan or the disclosure statement contemplate avoidance actions. The Court ruled, among other things, that *res judicata* precluded the plaintiff from pursuing a preference action because the disclosure statement and plan only contained a general retention clause reserving the debtor's right to pursue pre-petition causes of action without specifically identifying or disclosing any particular type of action. 228 B.R. at 13 (citing <u>In re Harstad</u>, 155 B.R. 500, 510 (Bankr.D.Minn.1993) <u>aff'd</u>, <u>Harstad v. First Am. Bank</u>, 39 F.3d 898 (8th Cir.1994); <u>D & K Properties Crystal Lake v. Mutual Life Ins.</u>, 112 F.3d 257, 259 (7th Cir.1997); and <u>In re Kelley</u>, 199 B.R. 698 (9th Cir. BAP 1996)).

This Court agrees that some specificity of retained causes of actions is needed in a plan of reorganization or disclosure statement to preserve preference actions post-confirmation.

However, the Court disagrees that a plan proponent must specifically identify every particular chain or each party subject to a preference action. As the Bankruptcy Court in Delaware recently discussed in In re Bridgeport Holdings, Inc., 2005 WL 1943535, *5 (Aug. 12, 2005) (Bankr.D.Del.2005), such minutiae is not necessary. In Bridgeport Holdings, the confirmation order and plan designated a Liquidating Trustee as the representative of the debtor's estates pursuant to Bankruptcy Code Section 1123(b)(3) to pursue all causes of action arising under Bankruptcy Code Section 547. "Virtually none of the details relating to the 3,000 potential preference actions were listed in the Debtors' Confirmation Documents." 2005 WL 1943535, *1. After the Liquidating Trustee filed a complaint to avoid certain preferences pursuant to Section 547, the defendant in the action filed a motion to dismiss arguing that the action was not sufficiently preserved in the debtor's disclosure statement and plan and that the action was barred under principles of res judicata. 2005 WL 1943535, *1. "In response, the Liquidating Trustee point[ed] to numerous provisions in the Confirmation Documents regarding the preservation of preference actions for post-confirmation adjudication." 2005 WL 1943535, *1. Like the defendants in this case, the defendant in Bridgeport Holdings urged the court to bar the plaintiff's claims and cited Huntsville Small Engines arguing that the language in the Confirmation Documents was insufficiently specific and that the plaintiff's case would only be actionable if the Confirmation Documents had identified the defendant by name and listed the matter as a future cause of action. 2005 WL 1943535, *5.

The Bridgeport Holdings Court distinguished the Huntsville Small Engines case on the basis that the language in the disclosure statement and plan in Huntsville Small Engines was merely "a general retention provision that did not even mention preference actions" and also

disagreed with the <u>Huntsville Small Engines</u> holding to the extent it held "that a debtor's plan and disclosure statement must always specifically name each party that will be subject to a preference action." 2005 WL 1943535, *10.

Here, Transit's plan sufficiently described this type of avoidance action.  The preserved claims were described as all avoidance actions owned by the debtor's estate, including claims under Bankruptcy Code Sections 544, 547, 548, 549, 550, 551, and 553.  There is no requirement that the plaintiff specifically identify each and every avoidance action and affirmatively reserve each specific future cause of action against every single potential defendant in order to retain the ability to preserve those claims after confirmation.

The standard of disclosure contained in Transit's plan is sufficient.  Potential defendants simply are not entitled to receive such advance notice of potential causes of action.   The standard for preserving causes of action for the benefit of creditors was expressed in <u>In re Pen Holdings, Inc.</u>, 316 B.R. 495, 500 (Bankr.M.D.Tenn.2004).  In that case, the Bankruptcy Court for the Middle District of Tennessee considered the potential that *res judicata* could preclude preference/avoidance actions if they are not reserved prior to confirmation. The Court explained that debtors could avoid a *res judicata* effect if they reserved the right to bring preference actions after confirmation by including certain language in the Chapter 11 plan. <u>Pen Holdings,</u> 316 B.R. at 498-99. The language containing this "power of preservation" is found in Section 1123(b)(3). <u>Id.</u> at 499. The purpose of Section 1123(b)(3) is to generally notify creditors that "there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." <u>Id.</u> at 500-01.

The purpose of Section 1123 is not, however, "to protect defendants from unexpected lawsuits." <u>Id.</u> at 504. Rather, '[t]he disclosure and notice afforded by a section 1123(b)(3) retention provision . . . is directed towards the estate's creditors, not the potential defendants on

the reserved claims.' Id. at 500 (citing Kmart Corp. v. Intercraft Co. (In re Kmart Corp.), 310

B.R. 107, 120 (Bankr.N.D.Ill.2004) (citing In re Goodman Bros. Steel Drum Co., 247 B.R. 604,

608 (Bankr.E.D.N.Y.2000) ("noting that under Bankruptcy Rule 3017, unless the potential

preference defendants are also creditors, they are not entitled to notice of the plan confirmation

hearing or to receive copies of the plan and disclosure statement"))).

      The test of whether avoidance actions were reserved by language in a reorganization plan

is whether the reservation is worded sufficiently to "allow creditors to identify and evaluate the

assets potentially available for distribution." Pen Holdings, 316 B.R. at 504. Here, the plaintiff

was appointed pursuant to Section 1123(b)(3)(B) in the Amended Plan and vested with the

authority to pursue transfers under Sections 544, 547, 548, 549, 550, 551, and 553 of the

Bankruptcy Code. Avoidance actions were discussed in varying detail in at least five sections of

the Disclosure Statement and three sections of the Amended Plan.[16]  Creditors received adequate

and sufficient notice of the debtor's reservation of claims.  Recipients of avoidable transfers are

entitled to no notice of any type regarding a debtor's intention to retain the right to file actions

post-confirmation.  Transit did everything necessary to preserve the claim Moecker is pursuing

against the defendants in this adversary proceeding.  Further, judicial estoppel is not applicable

on these facts. The Eleventh Circuit Court of Appeals discussed judicial estoppel in Parker v.

Wendy's Intern'l, Inc., 365 F.3d 1268 (11th Cir. 2004) and in Burnes v. Pemco Aeroplex, Inc.,

291 F.3d 1282 (11th Cir. 2002). "Judicial estoppel is an equitable doctrine invoked at a court's

discretion" that precludes a party from asserting inconsistent claims in legal proceedings. Burnes,

291 F.3d at 1285-86 (citing New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815,

149 L.Ed.2d 968 (2001)). Courts can invoke the doctrine "to protect the integrity of the judicial

---

[16]    Both the Disclosure Statement and the Amended Plan make multiple references to the plaintiff's
powers of avoidance (Doc. No. 605, pp. 47-48, 67, 80-81, 85; Exh. B, p. 2; Exh. F, pp. 7 -8) (Doc.
No. 606, pp. 52-53; Exh. A, pp. 7-8).

process by prohibiting parties from deliberately changing positions." <u>Burnes</u>, 291 at 1285-87 (<u>citing</u> <u>New Hampshire</u>, 532 U.S. at 749-50, 121 S.Ct. at 1814; <u>American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.</u>, 710 F.2d 1528, 1536 (11th Cir.1983) ("judicial estoppel applies to the 'calculated assertion' of divergent positions")). The doctrine should not be invoked when the prior position was a result of inadvertence or good faith mistake. <u>Burnes</u>, 291 F.3d at 1285-87 (citations omitted).

While not an exact science, courts in the Eleventh Circuit generally consider two factors in determining whether to apply judicial estoppel to a particular case. <u>Parker</u>, 365 F.3d at 1271 (<u>citing</u> <u>New Hampshire</u>, 532 U.S. at 750, 121 S.Ct. at 1815); <u>Burnes</u>, 291 F.3d at 1285 (<u>citing</u> <u>Salomon Smith Barney, Inc. v. Harvey, M.D.</u>, 260 F.3d 1302, 1308 (11th Cir. 2001)). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." <u>Burnes</u>, 291 F.3d at 1285-86 (<u>citing</u> <u>Salomon</u>, 260 F.3d at 1308). These factors do not represent an exhaustive list. Instead, courts must consider all circumstances when determining whether to apply judicial estoppel. <u>Burnes</u>, 291 F.3d at 1286; <u>New Hampshire</u>, 532 U.S. at 750-51, 121 S.Ct. at 1815 (Noting that courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party).

In <u>Parker</u>, the Eleventh Circuit Court of Appeals declined to invoke the doctrine to preclude a Chapter 7 trustee from pursuing an employment discrimination claim that the debtor initially failed to disclose as an asset on her bankruptcy schedules. 365 F.3d at 1269. The Court

ruled that the claim was an asset of the debtor's bankruptcy estate and that the trustee, as the real party in interest, should not be estopped from pursuing the claim since the trustee had not asserted divergent or inconsistent positions in any legal proceedings.

Like the Chapter 7 trustee in <u>Parker</u>, neither the debtor, Transit, nor the plaintiff have asserted any inconsistent positions under oath. Transit could not have pursued avoidance claims, such as this fraudulent transfer claim or other preference claims, until *after* the bankruptcy was filed. Prior to the Chapter 11 filing, only creditors could have asserted such claims, as allowed by state law.[17]  The right to pursue these types of creditor claims is granted to a Chapter 7 trustee, debtor in possession, or their designee under Section 544 and related provisions of the Bankruptcy Code only after a bankruptcy case is filed.

The debtor did not list this claim as an asset in its schedules because it did not have any such asset until this case was filed. From that time forward, neither the debtor nor the plaintiff denied the existence of this or any other avoidance claim, and the debtor specifically reserved the right to pursue such claims post-confirmation in its Amended Plan.  No inconsistent positions were taken under oath nor were any possible inconsistencies calculated to make a mockery of the judicial system. Therefore, judicial estoppel is unwarranted.

Finally, the cases cited by the defendants are factually distinct from the case here in the same critical respect—while they all involve a debtor's failure to adequately disclose a lawsuit, in each case the lawsuit was, or could have been, asserted by the debtor regardless of the bankruptcy case. In <u>Oneida Motor Freight</u>, seven months after confirmation, the Chapter 11 debtor sought to assert a contract and tort action seeking an approximate $7.7 million setoff against a bank. Because the debtor failed to disclose this claim in its schedules, disclosure

---

[17]  For example, Florida Statute Sections 726.101, *et. seq*.

statement, or confirmation order, judicial estoppel precluded the claim. Likewise, in <u>Krystal Cadillac-Oldsmobile</u>, the court upheld the use of judicial estoppel to bar the debtor from asserting a breach of contract and tort action where the debtor failed to list the claims as potential assets of the estate in its schedules or initial disclosure statement. Finally, in <u>Barger</u>, the debtor filed an employment discrimination suit and then filed a Chapter 7 case approximately five weeks later. The debtor did not list the lawsuit on her schedules and failed to disclose to the trustee that the lawsuit sought monetary relief, representing to the trustee only that the suit sought injunctive relief having no monetary benefit to the estate. When the case reached the Eleventh Circuit Court of Appeals, the Court determined that judicial estoppel was appropriate, precluding the debtor from obtaining any monetary relief on the undisclosed claims.

In each of these cases, the debtors could have asserted their various claims outside of the bankruptcy context, which is simply not the case here. In this case, the debtor only became entitled to assert its claims under Florida Statute Sections 726.101, *et. seq*., <u>after</u> it filed its Chapter 11 case, triggering its entitlement to pursue creditor claims under Bankruptcy Code Section 544. Without Section 544 or some other statutory vehicle entitling it to pursue the rights of its creditors, the debtor, or in this case the plaintiff as the debtor's designee, could not pursue the fraudulent transfer claims asserted here. The debtor's avoidance claims were not listed on the debtor's schedules for an obvious reason—the debtor had no such asset until after the bankruptcy case was filed, at which point the claims were adequately disclosed in the debtor's Disclosure Statement and Amended Plan. The Court simply cannot infer improper motive or bad faith on the part of the plaintiff.

*Res Judicata*. Lastly, the defendants argue that the Court order approving the Stipulation and resolving the defendants' objection to Transit's plan of reorganization somehow triggers a *res judicata* effect and precludes this adversary proceeding because the claims were previously settled.  In the Eleventh Circuit, "a party seeking to invoke *res judicata* must show that the prior decision: (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action." Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1269 (11th Cir. 2002) (citing In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001)).

The elements of *res judicata* are not met. The relevant prior decision of this Court—the Order approving the parties' Stipulation regarding the defendants' objection to the releases the debtor sought to grant in its reorganization plan—simply did not involve the causes of action at issue here. The Order approving the Stipulation simply did not resolve each and every issue that could arise between the parties in connection with the debtor's bankruptcy case. Rather, only the issues raised in the defendant's objection were resolved.  The settlement addressed the primary issue of whether confirmation would release claims the defendants held against Transit and its officers.  The settlement reached was that no releases would issue.  The resolution in no way released any claim the debtor had against the defendants, such as those asserted in the adversary proceeding. Therefore, the essential prong of *res judicata*, that the prior litigation raised the same issue, is not met.

The defendants have failed to demonstrate, as a matter of law, that the plaintiff lacks standing, that no factual disputes surround the solvency issues, or that the plaintiff's claims are barred by *res judicata* or judicial estoppel.  Accordingly, the defendants' Motion for Summary Judgment is denied. A separate order consistent with this ruling shall be entered.

DONE AND ORDERED on September 2, 2005, in Orlando, Florida.

_____
Karen S. Jennemann
United States Bankruptcy Judge

Copies provided to:

I. William Spivey, 450 S. Orange Avenue, Suite 650, Orlando, FL  32801

John B. Hutton, Greenberg Traurig, PA, 1221 Brickell Avenue, Miami, FL  33131

David A. Merkel, Merkel & Merkel, 524 Mt. Hope Avenue, Rochester, NY  14620

Michael A. Tessitore, McClane Tessitore, 215 East Livingston Street, Orlando, FL  32801